RAMONA MUÑOZ DE ALONSO, Plaintiff and Appellant, *v.* ANGEL VIEJO, Defendant and Appellee.

No. 3694. Argued December 15, 1925.—Decided July 22, 1926.

*José N. Quiñones* for the appellant. *Jacinto Texidor* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an injunction proceeding brought by Ramona Muñoz de Alonso against Angel Viejo to restrain the defendant from continuing a certain construction work.

The pleadings having been filed and the case brought to trial, the court finally dismissed the complaint for the reasons stated in its opinion as follows:

"The houses of the plaintiff and of the defendant formerly belonged to Miguel D. Granela, that of the defendant being of two stories and that of the plaintiff of one story. Both houses had a

party wall and in it, in the lower section, there were two openings, one for a door and another for a window, communication being possible between the two houses. Such was the condition in the year 1906 when the defendant acquired the two-story house and when the plaintiff bought hers. In neither of the deeds is there any indication of a suspension of that servitude. In the two-story house, in the upper section of the wall and on the side next to the plaintiff's house, there were three windows which existed when Granela was the owner of both houses built on the same lot. In the deed of sale from Granela to Viejo the grantor, who still owned the one-story house, obligated himself not to raise his wall or build his house higher without Viejo's consent. The openings and windows were public, visible, known, and have existed for more than twenty years. Finally defendant Viejo is rebuilding the two-story house and in the reconstruction retains the windows in the upper story and one of the openings on the ground floor.

"The theory of the plaintiff seems based on the fact that the defendant is building a house entirely new and different from the former house and for that reason the servitude is extinguished according to paragraph 3 of section 553 of the Civil Code. But this very statute is adverse to the plaintiff's contention, for it reads: 'When the tenements become in such condition that the servitude cannot be made use of; but the same shall revive if subsequently the condition of the tenements permits them to be used, unless when the use becomes possible, sufficient time for prescription have elapsed, in accordance with the provisions of the preceding number.'

"It has not been averred that between the time of razing the two-story house and the date of the filing of the complaint sufficient time elapsed for prescription.

"The reconstruction of a house attended by circumstances as in this case cannot be considered, as alleged by the plaintiff, as a total destruction of it for the purpose of the extinguishment of the servitude."

The plaintiff took this appeal and assigns that the district court erred (1) in holding that there existed a servitude of light and view in favor of the appellee; (2) in holding that the servitude in favor of the defendant, if any, was not extinguished by the tearing down of the old building; (3) in holding that in the case of a new building the right attached to the old building is transferred to the new

one; (4) in holding that the appellant agreed to the servitude imposed by her grantor in favor of the appellee, and (5) in weighing the evidence in favor of the defendant.

■ The appellant contends, in arguing the first assignment, that the servitude in question can not be held to exist because it is not recorded in the registry, nor constituted in a public instrument, and that prescription can not be pleaded for the reason that the appellant is a third person, citing the cases of *García* v. *García*, 25 P.R.R. 119, and *Díaz* v. *Guerra*, 18 P.R.R. 790.

One of the basic elements of our hypothecary system is publicity, but that element, as stated by the appellee in his brief, is not confined exclusively to the registry. In this connection the Supreme Court of Spain, in its decision of November 7, 1911, 122 *J. C.* 636, said:

"We cannot call a third person for the purpose of articles 2, 13, 23, 25 and 27 of the Mortgage Law, according to the repeated and constant doctrine of the Supreme Court, established in various decisions, among them those of July 13, 1885, March 31, 1892, January 11, 1895, and April 5, 1898, the person who acquires property lawfully encumbered by a servitude, the existence of which, by reason of external, apparent and unmistakable signs, cannot be doubted, although they may not be specially recorded in the registry, because in such a case, and the encumbrance being apparent and not invisible, the basis of the statute cited is lacking, as happens when the servitudes consist of water-works or permanent drains built on the servient tenement, whereby the water which from time immemorial had been used by the dominant tenement runs, and which servitude, being of a continuous, apparent and visible nature, could not have remained unknown."

It appears pertinent to cite also the decision of the said court of March 31, 1902, 93 *J. C.* 521, as follows:

"That though it be true that, according to art. 23 of the Mortgage Law, the titles wherein property rights, such as that of a servitude, are constituted or recognized, when not recorded in the registry, cannot prejudice third persons, such cannot be called, as has been held repeatedly by the Supreme Court, the person who, although

not intervening in the act or contract recorded, had knowledge upon acquiring the property of the servitudes which, by being apparent and showing themselves by external signs, such as those of light and view, could not have been unknown by the purchaser, for in that case, the encumbrance not being invisible, there is wanting as a basis for the application of said article, one of the principal objects of the Mortgage Law, which is the publicity of the encumbrance on real estate.''

Taking into consideration the facts in this case, the windows and openings in question having been made by the person who was the owner of both houses when they were located on the same lot, and the said windows and openings being apparent signs, section 548 of the Civil Code and the jurisprudence established by this court in the case of *Martínez* v. *American Railroad Co. of Porto Rico*, 19 P.R.R. 925, are entirely applicable. The statute reads as follows:

''Sec. 548. The existence or (of) any apparent sign of servitude between two tenements established by the owner of both of them, shall be considered, if one of them be alienated, as a title, in order that the servitudes may continue actively and passively, unless, at the time of the division of the ownership of both tenements, the contrary be expressed in the deed of conveyance of either of them, or if the said sign is removed before the execution of such instrument.''

A syllabus of the case cited is as follows:

''The provisions of section 548 of the Revised Civil Code recognizing and sanctioning the well-established theory of the apparent sign as a title for acquiring servitudes are applicable to the case of one single property divided into two or more parts.''

In view of what has been stated it seems clear that the cases of *García* v. *García, supra,* and *Díaz* v. *Guerra, supra,* cited by the appellant, have no application to the case.

Assignments 2 and 3 may be studied together. The court did not find from the evidence that the former building had been razed totally. It held that even if such were the case, taking into account the time elapsed between the demolition of the old house and the beginning of the new

work, the defendant had not lost his right under section 553 of the Civil Code, which, as far as applicable, reads:

"Sec. 553. Servitudes are extinguished:

\*    \*    \*    \*    \*    \*    \*

"2. By non-use for twenty years.

"In discontinuous servitudes, this period shall begin to be reckoned from the day on which they have ceased to be used; and with regard to continuous servitudes, from the day on which an act in contravention thereof may have taken place.

"3. When the tenements become in such condition that the servitude cannot be made use of; but the same shall revive if subsequently the condition of the tenements permits them to be used, unless when the use becomes possible, sufficient time for prescription have elapsed, in accordance with the provisions of the preceding number."

In his Commentaries on the Civil Code Manresa expresses himself as follows:

"In the Roman law the easements remained, we may venture to say, dormant but not dead, and thus if at any time the condition of the tenements made possible the use of the servitude, it revived and could be used. Modern codes do not maintain the rigidity of this principle; but not venturing to break away from it absolutely, mix this question with that of prescription, and only consent to the revival of the servitude within ten, twenty or thirty years . . . Finally, the act contrary to the servitude, if not always as an act, exists nevertheless as a fatal and unavoidable fact, in the case of continuous as well as of discontinuous servitudes under subdivision No. 3. Servitudes of light and view, for instance, are extinguished by the act of building, leaving them out as well as by walling up the openings or windows that enjoy their benefit; in both cases their use becomes impossible. Now then, if the building with the windows or openings is torn down or destroyed, those openings or windows cease to exist; the servitude is impossible; there is a fact that renders it useless, a fact that can only be considered as contrary to the servitude; it will be sufficient to begin counting from it, and as upon the extinction of the servitude of light that of not building has no object, this one, as the other becomes thereby extinct. We may say the same of waterworks servitudes, slopes of roofs, right to place a girder, etc. We must nevertheless reckon with the lapse of time. At best it may be said that the time fixed for prescription

can be interrupted, but never that it did not begin to run.'' 4 Manresa's Commentaries on the Civil Code, 633-634.

The appellant herself invokes the last of Manresa's paragraphs that we have transcribed. The citation is entirely adverse to her contentions. It would seem as if the appellant's theory is that immediately upon the razing of the old building the servitude became extinguished. It is not so. The demolition of the building is the starting point for counting the period of twenty years of non-use fixed by law. And in this case if the servitude was not used it was for a few days, or at most for some months.

The fourth assignment refers to a certain condition contained in the deed of July 27, 1906, whereby Granela, the original owner of both properties, sold one to the defendant, to wit: ''Fifth. It is specially stipulated between the parties to this deed that if in the future Manuel D. Granela should decide to build a second story on the brick house constructed by him and described in clause 3rd of this instrument, he shall not do so without the consent and approval of Angel Viejo.''

Although the trial judge recites this fact, his decision is not based on that clause. We are not confronted here with the question of its application or inapplication, nor with its validity or invalidity. It is not the plaintiff who is building, but the defendant who is rebuilding. It will therefore be useless to decide in this case the question discussed.

We have studied very carefully the evidence submitted and in our opinion the court committed no error in weighing it, especially in view of the fact that this is an injunction proceeding wherein the real question involved is whether or not the discontinuance of the work begun by the defendant should be ordered. For such relief the right of the plaintiff should have been shown clearly.

''It is a general rule,'' said this court in the case of *Martínez et al.* v. *Soto,* 32 P.R.R. 559, ''that an injunction will not be granted when there is a dispute as to the legal

right involved and the right of the plaintiff is doubtful, the theory being that it is the duty of the court to protect existing rights rather than to establish other new and doubtful rights.'' See the case of *Municipality of Comerío* v. *Rivera*, 34 P.R.R. 393.

For the reasons stated the judgment appealed from should be affirmed.